**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| MDC PARTNERS INC., MARK PENN, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CHARLENE BARSHEFSKY, WADE | : **SECURITIES EXCHANGE ACT OF** |
| OOSTERMAN, ASHA DANIERE, DESIREE | : **1934** |
| ROGERS, BRADLEY GROSS, and IRWIN D. | : |
| SIMON, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against MDC Partners Inc. ("MDC or the "Company") and the members MDC board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of MDC by Stagwell Media LP ("Stagwell") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on February 8, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration

Statement recommends that Company stockholders vote in favor of a series of proposed transactions whereby (i) MDC will redomicile to Delaware (thereafter MDC will be referred to as "MDC Delaware"); (ii) MDC Delaware will merge with one of its indirect wholly owned subsidiaries and become a direct subsidiary of a newly-formed, Delaware-organized, NASDAQ-listed corporation ("New MDC"); (iii) Stagwell will contribute (a) the issued and outstanding equity interest of Stagwell Marketing Group Holdings LLC ("SMGH"), the direct or indirect owner of the Stagwell Subject Entities other than SMGH, to OpCo in exchange for 216,250,000 common membership interests of OpCo, and (b) an aggregate amount of cash equal to $100 in exchange for shares of a new Class C series of voting-only common stock of New MDC equal in number to the Stagwell OpCo Units; and (iv) New MDC will be referred to as the Combined Company; (v) MDC/Midas Merger Sub I LLC ("Merger Sub") a wholly owned subsidiary of New MDC, will merge with and into MDC Delaware, with MDC Delaware continuing as the surviving corporation (the "Proposed Transaction").

3. As discussed below, Defendants have asked MDC stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Moelis & Company LLC ("Moelis") and Canaccord Genuity Corp. ("Canaccord" and together with Moelis, the "Financial Advisors") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MDC stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because MDC is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of MDC common stock and has held such stock since prior to the wrongs complained of herein.

3

10. Individual Defendant Mark Penn has served as a member of the Board since March 2019 and is the Chairman and Chief Executive Officer of the Company, and also a Managing Partner and founder of Stagwell.

11. Individual Defendant Charlene Barshefsky has served as a member of the Board since April 2019.

12. Individual Defendant Wade Oosterman has served as a member of the Board since January 2020.

13. Individual Defendant Asha Daniere has served as a member of the Board since June 2019.

14. Individual Defendant Desirée Rogers has served as a member of the Board since 1997.

15. Individual Defendant Bradley Gross has served as a member of the Board since June 2019.

16. Individual Defendant Irwin D. Simon has served as a member of the Board since July 2010 and is the Lead Independent Director.

17. Defendant MDC is incorporated in Canada and maintains its principal offices at One World Trade Center, New York, New York.  The Company's common stock trades on the NASDAQ Global Select Market under the symbol "MDCA."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>**The Proposed Transaction**</u>

20. MDC provides marketing, advertising, activation, communications, and strategic consulting solutions worldwide. It offers a range of client services, including global advertising and marketing, data analytics and insights, mobile and technology experiences, direct marketing, database and customer relationship management, business consulting, sales promotion, corporate communications, market research, corporate identity, design and branding services, social media strategy and communications, product and service innovation, and e-commerce management, as well as media buying, planning, and optimization. The Company was formerly known as MDC Corporation Inc. and changed its name to MDC Partners Inc. in January 2004. MDC was founded in 1980 and is headquartered in New York, New York.

21. On December 21, 2020, MDC announced that they had entered into a proposed transaction:

> NEW YORK, Dec. 21, 2020 /PRNewswire/ -- MDC Partners Inc. ("MDC") (NASDAQ: MDCA) and Stagwell Media LP ("Stagwell") announced today that they have entered into a definitive transaction agreement (the "Transaction Agreement") to combine their respective businesses, uniting the award-winning talent of MDC with the advanced technology platform of Stagwell to create the transformative marketing company today's marketplace demands (the "Transaction"). Together, the companies will significantly expand their range of best-in-class capabilities, depth of expertise, and geographic footprint to deliver expanded value to clients, and meaningfully accelerate the combined company's growth.
>
> "This is a new day for MDC and Stagwell," said Mark Penn, Chairman and CEO of MDC Partners, and Managing Partner of The Stagwell Group. "Together, they unleash precisely the right talent and technology to create a transformative marketing services company offering scaled Creative Performance. MDC is celebrated for bringing award-winning creative firepower to the world's leading and most ambitious companies, and Stagwell has been built with deep and sophisticated technology at its core. Unencumbered by legacy structures or assets, the combined company will have the integrated, modern offerings marketers deserve, and the

resources to invest meaningfully in our global capabilities, our talent, and our clients' future."

The combined company will provide the balance of integrated solutions that modern marketers need to succeed, including second-to-none creativity and communications, scaled media and data capabilities, superior consumer insights, technology development and innovation, and digital transformation. Without giving effect to any conversion of outstanding preference shares, the pre-Transaction holders of MDC Class A and Class B shares ("MDC Shares") would receive 26% of the common equity of the combined company and Stagwell would receive share consideration equal to 74% of the common equity of the combined company (excluding Stagwell's ownership in the combined company derived from its ownership of pre-Transaction MDC Shares), each on a pro forma basis. Stagwell and its affiliates are expected to hold approximately 79% of the common equity of the combined company immediately after closing of the Transaction (assuming no conversion of outstanding preference shares of MDC). Further details on the combination and the business offerings of MDC and Stagwell can be found in our investor presentation at www.mdc-partners.com/investors and accompanying video at www.mdc-partners.com.

With over 8,600 employees across 23 countries, the combined company will be ideally suited to lead marketers into the future, with deepened expertise in digital services, and more than tripling high-growth digital offerings to 32% of the combined business. With a track record of collaboration across disciplines bringing the right technology solutions to its blue-chip clients' business and marketing challenges, the combined company's network also brings experience in building and developing its own proprietary digital products to solve for gaps in the marketing ecosystem, which together could generate $90 - $150 million annual top-line benefit over time.

"Having thoroughly evaluated the Transaction – and having received the recommendation of the Special Committee, which, in close collaboration with its independent legal and financial advisors, met extensively to assess, evaluate and negotiate the Transaction – we are pleased to have reached a definitive agreement that maximizes growth potential for MDC and opportunity for all stakeholders," said Irwin D. Simon, Presiding Director of MDC Partners and Chair of the Special Committee of MDC Partners' Board of Directors. "MDC boasts a rich history and culture of entrepreneurship while innovating to solve for core client and industry needs. Combining these two companies will build on that legacy to create an even stronger industry leader."

**Highly Compelling Strategic Rationale**

In contrast to MDC remaining a standalone company, the highly compelling combination creates a leading marketing services company with enhanced global

scale and broadened premium capabilities highlighted by the following strategic rationale:

**Strategic Advantages of Combined Company:**

- *Targeting 5%+ annual organic growth, driven by 10-15% digital marketing growth and complementary capabilities, and 9%+ total annual revenue growth including new products and acquisitions*

- *Media and data operation managing $4.4 billion in media spend, bringing added scale and sophistication*

- *New revenue streams from expanded digital and technology products*

- *More than tripling high-growth digital offerings, with 32% of business in digital services*

- *Enhanced global scale across 23 countries*

- *Leadership team with experience in value creation in marketing services*

- *Expanded opportunities for high-performing network talent*

**Financial Strength:**

- *Run-rate savings of ~$30 million from operational synergies over time, with ~90% expected to be achieved within 24 months*

- *Enhanced capital structure, decreasing net leverage ratio from 4.2x to 3.4x, after giving full effect to run-rate operational synergies*

- *Over $200m of pro forma cash generation in 2021*

- *Target to grow to $3 billion+ in revenue in 2025, including acquisitions, organic growth and new products*

**Governance and Management**

Mark Penn, current CEO and Chairman of MDC and Managing Partner of Stagwell, will continue as CEO and Chairman of the combined company. The management team for the combined company will consist of existing executives from both MDC and Stagwell.

Pursuant to the Transaction Agreement, the board of directors of the combined company will consist of nine members, including Mark Penn and Bradley Gross. Three independent directors on the Board will continue as directors in the combined

company and the combined company shall cause such directors to be nominated at the company's next two annual meetings; Stagwell will be entitled to designate the other four directors to serve on the Board.

The combined company will remain headquartered in New York, NY and will maintain a significant presence in Washington D.C.

**Transaction Structure**

Under the terms of the Transaction Agreement, the Transaction will be effected using an "Up-C" partnership structure, to permit additional basis step-up and depreciation for the combined company. Pursuant to the Transaction, MDC will be converted into a limited liability company that holds both Stagwell's subsidiaries and MDC's operating assets and Stagwell will contribute its operating businesses to MDC as so converted. The limited liability company will be owned in part by a newly-formed NASDAQ-listed company incorporated in Delaware ("New MDC"), and in part by Stagwell. On a pro forma basis, without giving effect to any conversion of outstanding preference shares of MDC, the pre-Transaction holders of MDC Shares would own 26% of the common equity of New MDC and Stagwell shareholders would be issued shares of a new Class C series equivalent to 74% of the common equity of New MDC and exchangeable into shares of New MDC Class A Shares on a one-for-one basis at Stagwell's election.

Additionally, MDC and Stagwell will enter into a tax receivable agreement pursuant to which New MDC and Stagwell will share in the economic benefits of tax attributes resulting from Stagwell's exchanges of "Up-C" units.

Concurrently with the execution of the Transaction Agreement, MDC and an affiliate of Goldman Sachs, as sole holder, agreed to renegotiate the terms of MDC's issued and outstanding Series 4 convertible preference shares (the "Goldman Amendments"). The revised terms reduce the conversion price from $7.42 to $5.00 and extend accretion for two years at a reduced rate of 6%. In connection with the Transaction, an affiliate of Goldman Sachs, as holder, will have the right to redeem up to $30 million of its preference shares in exchange for a $25 million subordinated note or loan with a 3 year maturity (i.e., exchange at an approximately 17% discount to face value). The $25 million note or loan will accrue interest at 8.0% per annum and is pre-payable any time at par without penalty.

Subject to market conditions and other factors, MDC intends to conduct a consent solicitation for certain waivers and amendments to its 6.50% senior notes due 2024 (the "Notes") necessary to close the Transaction. MDC has entered into consent and support agreements with holders of more than 50% of the aggregate principal amount of its Notes to consent to the necessary waivers and amendments in the consent solicitation.

**Path to Completion**

The Transaction is subject to customary approvals, including, but not limited to, approvals from the MDC shareholders at a special meeting called for such purpose (the "Special Meeting"), which will include the approval of (i) 66 2/3% of the votes cast by all holders of various classes of shares of MDC, as applicable, and (ii) pursuant to Multilateral Instrument 61-101 – *Protection of Minority Security Holders in Special Transactions* ("MI 61-101"), a simple majority of the votes cast by the holders of applicable classes of shares of MDC, in each instance voting separately as a class (unless relief or approval is obtained from the applicable securities regulatory authorities to permit voting as a single class), excluding the votes cast by "interested parties" for purposes of MI 61-101 (which will include Stagwell, Mark Penn, Goldman Sachs and their respective affiliates (other than MDC and its subsidiaries) and their joint actors, as applicable) or any votes otherwise excluded for purposes of the "minority approval" determined pursuant to MI 61-101. Additional detail on the process and MI 61-101 can be found below. In consideration for the Goldman Amendments, an affiliate of Goldman Sachs has agreed to consent to the Transaction and waive any conversion ratio adjustments under its MDC Series 4 Preference Shares and has agreed to vote in favor of the Transaction subject to entering into customary definitive documentation to reflect the Goldman Amendments.

Closing of the Transaction is also subject to the satisfaction of a number of other conditions customary for transactions of this nature, including the receipt of certain regulatory and stock exchange approvals. The parties are targeting a closing in the first half of calendar year 2021, subject to receipt of applicable approvals.

Further information regarding the Transaction will be contained in the information circular / proxy statement that MDC will prepare, file and send to each MDC shareholder in connection with the Special Meeting.

Following closing of the Transaction, New MDC will apply to have the Class A shares of New MDC Shares listed on Nasdaq under the same symbol as Class A shares of MDC trade today: "MDCA".

A copy of the Transaction Agreement will be filed on MDC's SEDAR and EDGAR profile and will be available for viewing at www.sedar.com and www.sec.gov.

\* \* \*

**Advisors**

Moelis & Company LLC is serving as financial advisor, and Canaccord Genuity Corp. is serving as independent financial advisor, to the Special Committee of MDC's Board of Directors, with DLA Piper LLP (US) and DLA Piper (Canada) LLP serving as legal advisor to the Special Committee of MDC's Board of

Directors. Cleary Gottlieb Steen & Hamilton LLP and Fasken Martineau DuMoulin LLP are serving as legal advisors to MDC. J.P. Morgan Securities LLC is serving as exclusive financial advisor to Stagwell, and Freshfields Bruckhaus Deringer US LLP and McCarthy Tétrault LLP are serving as legal advisors to Stagwell. Kingsdale Advisors is serving as strategic shareholder and communications advisor to MDC Partners. Sloane & Company is serving as communications advisor to MDC.

22.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that MDC's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

23.     On February 8, 2021, MDC filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning MDC Financial Projections*

24.     The Registration Statement fails to provide material information concerning financial projections by MDC management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial

forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that MDC management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. For the Stagwell Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Political Avg. Net Revenue, Adjusted EBITDA, Political Avg. Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP

measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Moelis's Financial Analysis*

30. With respect to Moelis's *Discounted Cash Flow Analysis* for the Company, the Registration Statement also fails to disclose: (i) the estimated terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 1.0% to 2.0%; (iii)

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

the inputs and assumptions underlying the range of discount rates ranging from 9.75% to 12.00%; and (iv) the line items values used to calculate the after-tax unlevered free cash flows.

31. With respect to Stagwell's *Discounted Cash Flow Analysis* for the Company, the Registration Statement also fails to disclose: (i) the estimated terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.75% to 9.50%; and (iv) the line items values used to calculate the after-tax unlevered free cash flows.

32. With respect to Moelis's *Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose the transactions observed by Moelis in the analysis, the individual multiples and metrics for the transactions observed by Moelis in the analysis, including the values and premiums of the transactions, and the dates of the closings of the transactions.

33. With respect to Canaccord's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the inputs and basis for using the following assumptions in its analysis: (i) a debt capital structure of MDC comprised of pro forma leverage of total debt to EBITDA of 7.0x, (ii) an equity investment that would achieve an internal rate of return of 17.5% on equity invested during a five-year period, and (iii) a projected EBITDA terminal value multiple of 11.5x to 14.5x for such period.

34. With respect to Canaccord's *Precedent Transactions Analysis*, the Registration Statement fails to disclose: (i) the implied future enterprise values of MDC for fiscal year end 2021 and each of the next two fiscal year ends; (ii) the basis and inputs for applying ratios of MDC's EV to EBITDA ranging from 11.5x to 14.5x to NTM EBITDA estimates; (iii) projected amount of MDC's net debt as of each respective fiscal year end; (iv) the estimated fully diluted number of

shares of MDC common stock; (v) the inputs and assumptions for using a discount rate of 10.5%; (vi) the estimate of the cost of equity for MDC.

35. With respect to Canaccord's *Discounted Cash Flow Analysis for MDC*, the Registration Statement fails to disclose: (i) the terminal value of the Company; (ii) the basis for using a range of discount rates from 10.0% to 11.0% to the projected unlevered free cash flows; and (iii) the basis for using a perpetuity growth rate range of 0.50% to 1.00%.

36. With respect to Canaccord's *Discounted Cash Flow Analysis for Stagwell*, the Registration Statement fails to disclose: (i) the terminal value of the Company; (ii) the basis for using a range of discount rates from 8.0% to 9.0% to the projected unlevered free cash flows; and (iii) the basis for using a perpetuity growth rate range of 0.50% to 1.00%.

37. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by the Financial Advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of MDC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of MDC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of MDC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of MDC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

48. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 8, 2021

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

|  |
|---|
| Email: melwani@whafh.com |

*Attorneys for Plaintiff*